# EXHIBIT 1

Filed          21-CI-006111     10/26/2021          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

CIVIL CASE NO.                                    JEFFERSON CIRCUIT COURT
                                                 HON. JUDGE _____
                                                     DIVISION _____


WILLIAM KAMERON ROBARDS
614 W. Ashland Ave.
Louisville, Kentucky 40214


-AND-


DARRIUS CALVIN
1004 Andale Court
Louisville, Kentucky 40214

-AND-


WESLEY JOHN MEANS
3608 Taylorsville Road
Louisville, Kentucky 40220


-AND-


RYAN CRUTCHER
4015 Bucks Run Rd., Unit 202
Louisville, Kentucky 40219


-AND-


ERIC LAMONT SITEGRAVES
3319 Hale Ave
Louisville, Kentucky 40210



*VS*.

Filed          21-CI-006111       10/26/2021      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

BLK OUT TRANSPORT

  Registered Agent: Garrett Sweigert
                    3791 Newburg Road
                    Louisville, Kentucky 40214

-AND-

GARRETT SWEIGERT, Individually and on behalf of BLK OUT TRANSPORT

-AND-

LINDSEY SWEIGERT, Individually and on behalf of BLK OUT TRANSPORT


    Comes the Plaintiffs, through Counsel, and for their Complaint against the above-
referenced Defendants, state as follows:


## **JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this matter pursuant to KRS § 23A.010.

2.    Based on information and belief, Defendant Blk Out is a Kentucky Business doing business in Kentucky with a principal place of business located at 3791 Newburg Rd, Louisville, KY 40218.

3.    Based on information and belief, Defendant Garrett Sweigert is a resident of the state of Illinois.

4.    Based on information and belief, Lindsey Sweigert is a resident of the state of Illinois.

Filed          21-CI-006111      10/26/2021      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

5.      At all relevant times herein, Wesley Means was a citizen of Jefferson County, Kentucky.

6.      At all relevant times herein, William Robards was a citizen of Jefferson County, Kentucky.

7.      At all relevant times herein, Eric Sitegraves was a citizen of Jefferson County, Kentucky.

8.      At all relevant times herein, Darrius Calvin was a citizen of Jefferson County, Kentucky.

9.      At all relevant times herein, Ryan Crutcher was a citizen of Jefferson County, Kentucky.

10.     Venue is proper in Jefferson Circuit Court as the incidents at issue and harm caused occurred in Jefferson County, Kentucky.

## STATEMENT OF FACTS

### I.     *William "Kam" Robards.*

11.     William Robards began his employment at Blk Out Transport on March 1, 2021 at the SDF terminal.

12.     William has a Class A Commercial Driver's License (CDL).

13.     He is known by his former coworkers as the most hardworking employee they knew, always going the extra mile with or without being asked and willing to stay late or come in early to help others.

14.     William was never late to work, never called in sick, and never missed a day of work.

Filed            21-CI-006111       10/26/2021        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

15.     Mr. Robards never had a write-up for any conduct violation at Blk Out Transport and had no trail of poor work performance.

16.     He was given a performance-based raise of 50 cents approximately one month before his termination.

17.     William worked approximately 40 hours a week, but often more due to his coming in on weekends.

18.     Blk Out Transport staff at the SDF terminal know Mr. Robards as the best driver they had and his coworkers described him as the most hardworking and dedicated employee they knew.

19.     William Robards was terminated from Blk Out Transport on July 1, 2021 due to his race.

## II.     *Darrius Calvin.*

20.     Darrius Calvin was hired by Blk Out Transport in May 2021at the SDF terminal.

21.     Darrius worked in the warehouse.

22.     Darrius describes the environment at Blk Out Transport as unequal, unfair, and segregated.

23.     Darrius observed that all the employees working in a supervisory or management capacity were white, while the employees driving trucks and working in the warehouse were predominantly black.

24.     Darrius was not paid for his first four weeks of work. He was promised a check that never came —he was eventually paid in cash.

25.     When he asked questions about his payment, he was given no answers however, the questions resulted in Blk Out cutting his hours.

Filed            21-CI-006111       10/26/2021        David L. Nicholson, Jefferson Circuit Clerk

Filed            21-CI-006111         10/26/2021         David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

26.     The company then prevented Darrius from applying for a supervisor positions, despite already performing many of the supervisor duties - they instead hired a white woman.

27.     During his employment, Darrius was injured on the job. Instead of providing Darrius workers compensation details, they attempted to dock his pay for the time missed due to the injury.

28.     When accepting this position, Darrius was told there would be two other individuals working alongside him in the warehouse – this was untrue and was a contributing factor to Darrius' injury.

29.     Darrius overheard Lenny Hale calling him and the other black employees "ghetto" in a conversation with Lindsey Sweigert, the owner's wife.

30.     Darrius observed William always being given more work than other white employees.

31.     Mr. Calvin quit his job at Blk Out Transport in June 2021 due to a hostile work environment, discrimination, and inappropriate business practices.

### III. *Ryan Crutcher.*

32.     Ryan Crutcher was hired by Blk Out Transport on April 5, 2021, at the SDF terminal.

33.     Ryan worked as a truck driver with a Class A driver's license.

34.     Ryan noted that all the employees working in a supervisory or management capacity were white, while the employees driving trucks and working in the warehouse were predominantly black.

35.     Ryan and the other black employees were asked to perform grueling physical tasks outside their job descriptions but never were white employees asked to do the same.

Filed          21-CI-006111    10/26/2021       David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

36.    Ryan and William were made to do the work of other white employees, such as finish their routes and load or unload their trucks.

37.    Ryan and his other black coworkers were rarely permitted industry standard breaks because supervisors would relentlessly give them additional work while white employees had time for breaks.

38.    Ryan was specifically targeted by Kellie Hornback (the individual chosen to be a supervisor over Darrius) who continuously asked him to make certain deliveries despite his expressed concerns about feeling unsafe and in danger while in the areas he was asked to make deliveries.

39.    In addition to being targeted by his supervisor, Lenny Hale repeatedly made discriminatory comments about the racial segregation at Blk Out Transport -Ryan was told that "Blk Out is all black."

40.    When Ryan needed assistance with some deliveries, he was told by Alexandra Mason told him that William was not allowed to ride in the trucks with him for any reason.

41.    Garrett Sweigert routinely came up with excuses as to why he could not provide for his black employees, while continuing to meet the needs for the white employees.

42.    Ryan was hurt multiple times on the job, including overextending his shoulders and back, but he did not report his injuries to supervisors because he feared retaliation including cutting his hours, as had been done to Darrius.

43.    Ryan was told his wage would be twenty-two dollars ($22.00) an hour to start, but he was paid only paid twenty dollars ($20.00) an hour, but only when he agreed to worked 45 hours a week, and take on additional responsibilities.

44.    Ryan performed additional tasks at work while other white employees made more money and had a smaller workload.

45.    Ryan was unwelcome, disrespected, and discriminated against at Blk Out Transport.

46.    Mr. Crutcher quit his job at Blk Out Transport on the same day William was terminated—July 1, 2021.

### IV. *Eric Sitegraves.*

47.    Eric Sitegraves was hired by Blk Out Transport in May 2021 at the SDF terminal.

48.    Eric drove box trucks and vans.

49.    Eric was told he would make sixteen dollars ($16.00) an hour at Blk Out Transport while other white drivers earned salary.

50.    Eric was not paid during his first three weeks of work at Blk Out Transport – he was ultimately paid after confronting a supervisor.

51.    Although he worked at least 40 hours a week at the supposed sixteen dollars ($16.00) an hour wage, Eric only made $325-$350 a week which indicates that his either his was was closer to eight dollars ($8.00) an hour OR he was only being paid for about twenty hours a week.

52.    Eric worked with Kellie Hornback at a previous employer and moved to Blk Out Transport to escape the racist environment created by her, including constant jokes towards an African employee about his heritage and questioning his citizenship – when she arrived at Blk Out, Eric became one of Kelli's targets.

53.    Eric actively tried to keep to himself because of discriminatory behavior from white office staff.

Filed          21-CI-006111      10/26/2021      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

54.     Eric attempted to report racial behavior to multiple supervisors and managers, specifically Kellie, but she made excuses for the racist behavior and never filed a complaint.

55.     When Eric reported racist behavior to Lenny Hale, he was told "we don't play that shit here," and swept it under the rug.

56.     Eric reached out to Nora Rubinowski at Human Resources several times about the racially hostile work environment, but she often did not reply and no action was ever taken.

57.     After being turned away by multiple supervisors, Eric felt compelled to tell his black coworkers to avoid Jackie and Kelli as much as possible.

58.     Eric noticed that all the employees working in offices in a supervisory or management capacity were white while the employees performing any manual labor were predominantly black.

59.     Eric was ignored by white supervisors while those same managers always came to the aid of the white employees.

60.     Eric was characterized as an "angry black man" when he tried to ask about his pay, his hours, or raise concerns about the work environment.

61.     Eric notes that he saw William doing additional tasks and working the most hours at Blk Out Transport and knew he was not being paid for it.

62.     Eric Sitegraves quit his job at Blk Out Transport due to the hostile racist work environment.

### V. *Wes Means*

63.     Wes was hired by Blk Out Transport in March 2020 at the SDF terminal.

64.     Wes primarily drove box trucks and vans for Blk Out Transport.

Filed          21-CI-006111          10/26/2021          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

65.     Wes enjoyed his job and was a hard worker at Blk Out Transport, which is supported by the multiple clients who called the company to praise him and say they needed more workers like him.

66.     Wes enjoys weight strength fitness and was close to 300 lbs during his time working at Blk Out Transport, which white supervisors often exploited by asking him to make the heaviest and largest deliveries.

67.     Wes was often referred to as a "gorilla" by Lenny Hale, who thought this derogatory nickname was comedic.

68.     Wes was working a two-man job when he began at Blk Out.

69.     His starting pay was sixteen dollars ($16.00) per hour – significantly less than his white counterparts.

70.     Wes was promised a raise at the start of 2021 but never received one due to ambiguous "tax issues," according to a supervisor.

71.     Wes has an impaired knee and often sees his medical provider for corticosteroid injections.

72.     Wes repeatedly called on his supervisors to hire additional workers to take the load off of him and his bad knee, but for months on end they did not and the pain in his knee worsened.

73.     Wes always had a doctor's note on days he took off work for medical reasons; otherwise, he never took a day off.

74.     Although Wes had been working at Blk Out for almost a year with minimal raises to his pay, a white male employee who was brought to the company by a friend of Garrett Sweigert's, instantly made more money than Wes who was doing the exact same job.

Filed          21-CI-006111       10/26/2021       David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

75.     Wes ultimately left Blk Out due to hostile discriminatory work environment and unsafe business practices.

### V. *Blk Out Transport.*

76.     Blk Out Transport is a trucking company that provides services including local pickup and delivery, white glove (commercial and residential), tradeshow, lift gate assist, airport transfers, intermodal, and local and regional truckload, according to the Blk Out Transport official website.

77.     Blk Out Transport is based out of Chicago and has terminals at the Chicago O'Hare International Airport (ORD) and the Louisville Muhammad Ali International Airport (SDF).

78.     The company has operated at SDF terminal for less than one year.

79.     Garrett Sweigert is the President and owner of Blk Out Transport, according to the official company website.

80.     Lindsey Sweigert is the wife of Garrett Sweigert and helps operate the company; however, she claimed to be the "real owner" of Blk Out Transport during Mr. Robards' termination.

81.     Nora Rubinowski is the head of Human Resources.

82.     Lenny Hale is a supervisor on payroll, but the company does not publicly claim him as an employee.

83.     Kellie Hornback is the Operations Manager at the SDF terminal.

84.     Jackie ??? is a warehouse and dispatch manager at the SDF terminal, but is currently on medical leave.

85.     Brandi Laferty is a Station Manager at the SDF terminal.

Filed          21-CI-006111     10/26/2021     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

86.     Alexander Mason works in a management position and is the sister of Garrett Sweigert.

### VI. William Robards' termination.

87.     William has a Class A driver's license (CDL) which most of the Blk Out Transport employees don't have, but there were two other drivers with this license—a white employee named Ethan and Ryan Crutcher.

88.     William was consistently asked to do things that were not part of his job description and that white employees were not asked to do, including loading and unloading other drivers' trucks, pulling the other drivers' routes, and staying to help in the warehouse.

89.     In a conversation William had with Operations Manager, Alexandra Mason approximately one week prior to his termination, she told him to ask Mr. Sweigert for salary because she believed William was deserving and they were short staffed and needed to retain hard workers.

90.     When William took Alexandra's advice and advocated for himself by asking for proper pay or simply a better understanding of the company's policies regarding his compensation, William was terminated without justification.

91.     Lindsey Sweigert called William in the middle of the work-day on July 1, 2021 to terminate him for being too angry and no longer a good fit.

92.     Lindsey told William on the phone that he was, *"no longer a good fit for the company,"* despite having no trace of poor work performance and receiving a 50 cent performance-based raise just one month prior to his termination.

Filed          21-CI-006111      10/26/2021      David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

93.     Lindsey Sweigert informed William over the phone that she is the owner of Blk Out Transport and Garrett Sweigert, her husband and the person named owner on the Blk Out Transport website, works for her.

94.     William told Lindsey on this phone call that Blk Out Transport wages were ridiculously low compared to the average pay for a CDL driver at most other companies and he simply did not understand how he could be making so little money with the amount of work and hours he had been putting in.

95.     Sweigert told William that he was too angry of a black man and that he was making her uncomfortable.

96.     Since his termination, the Sweigerts have blocked William's phone number and he has been unable to have his questions about his pay and termination answered.

97.     William had contact with Nora at Human Resources while still employed at Blk Out Transport, but since his termination she has not responded to his calls or texts.

### VII. Wes Means' termination.

98.     Wes was asked to make a large delivery of treadmills in a box truck on small roads in Baghdad, Kentucky, and consequently the truck got stuck in a small driveway.

99.     Wes called Alexander Mason at the SDF terminal dispatch multiple times in need of help with the truck.

100.    When Blk Out failed to send someone to help him after multiple calls and it started to get dark outside, Wes was forced to call Suburban Towing and pay $291 out of his own pocket to safely return to Louisville.

101.    Wes did not get off work that day until after 9 pm.

102.    On January 15, Wes was told to go get lunch.

103.   When Wes returned to work, there were three police officers awaiting his arrival.

104.   Blk Out term innated Wes with the unnecessary help of law enforcement on that date.

105.   Wes was not charged with a crime.

106.   Wes was never reimbursed for the towing, nor did he receive any notice or letter of termination.

107.   Wes never received his last paycheck after termination.

108.   Despite his efforts, Wes has failed to receive unemployment benefits since his termination at Blk Out and endures severe financial hardship.

### VII. Blk Out Transport has a pattern of racial discrimination.

109.   All Plaintiffs describe Blk Out Transport as having an unfair, inequitable and segregated environment.

110.   Blk Out Transport fails to pay all black employees as promised when hired.

111.   Blk Out Transport pays black employee significantly less than white employees.

112.   Black Out Transport prevents black employees from advancing and likewise does not hire minorities for management positions.

113.   Blk Out Transport treats black employees as though they are uneducated and uncivilized, and believes they can underpay, exploit, and disregard them without consequence.

114.   William Robards did not receive an official letter or notice of termination for over a month after the actual termination and Wes Means never received any official communication from the company after his termination.

115.   Eric, Darrius, and Ryan were all effectively constructively terminated due to racial discrimination

Filed 21-CI-006111 10/26/2021 David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

116. Eric, Darrius, Ryan, and Wes all experienced direct explicit and blunt racial discrimination against them at Blk Out Transport from white employees through disparaging racial comments and slurs.

### VIII. Blk Out disregards Federal and State Laws endangering their employees.

117. Despite Department of Transportation Requirements, no drivers at Blk Out transportation are asked to keep logs.

118. Blk Out does not keep track of the drivers' drive time.

119. Thereby, Blk Out subjects its employees to dangerous conditions which threaten not only their personal well-being but the well-being of others.

### COUNT I
### General Negligence

120. Plaintiff restates the allegations and averments contained in the previous paragraphs as if fully contained herein.

121. Under Kentucky law, a party has been negligent when the party has a duty to the Plaintiff, and breaches that duty causing harm.

122. Here, Blk Out had a duty to Plaintiffs, as it functioned as its employer for the entire period of the contractual relationship.

123. Under Kentucky law, employers have a duty to their employees.

124. Here, Blk Out breached that duty when it failed to compensate employees, failed to protect employees from Federal audit and injury, when it failed to adequately train, background check, and monitor employees.

Filed          21-CI-006111        10/26/2021       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

125.    Here, Blk Out breached its duty to Plaintiffs when it failed to abide by Federal Motor Carrier law.

126.    When Blk Out breached its duty to Plaintiffs, Plaintiffs suffered harm—to wit, loss of wages, personal injury, damaged reputation, and harm related to fraud and misrepresentations that occurred during employment.

127.    Blk Out is responsible for compensating Plaintiffs for the sum of damages suffered by Plaintiffs.

## COUNT II
### Fraud

128.    Plaintiff restates the allegations and averments contained in the previous paragraphs as if fully contained herein.

129.    Under Kentucky law, fraud must be specifically pled.

130.    Here, Blk Out defrauded all of the above-referenced Plaintiffs when it conveyed certain pay rates to the Plaintiffs, promised to compensate them at that rate, and then later refused to do so.

131.    Here, Blk Out defrauded all of the above-referenced Plaintiffs when it conveyed to Plaintiffs that it was a licensed carrier under the Federal Motor Carrier Act and that it complies with all related laws.

132.    In fact, Blk Out does not comply with any such regulations. For instance, drivers are not instructed to keep logs.

Filed            21-CI-006111      10/26/2021        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

133.    The lack of documentation caused by Blk Out's fraud has made it nearly impossible for all of the above-referenced Plaintiffs to find employment with other Motor Carriers.

134.    As such, Blk Out's fraud has caused Plaintiffs to suffer harm.

135.    Blk Out is liable for all damages incurred as a result of its fraud.

## COUNT III
## Breach of Contract

136.    Plaintiff restates the allegations and averments contained in the previous paragraphs as if fully contained herein.

137.    Blk Out entered into an employment contract with all above referenced individuals.

138.    Blk Out breached all of the above-referenced contracts when it failed to compensate employees per its contract.

139.    Blk Out breached all of the above-referenced contracts when it failed to report all income and payments to the Internal Revenue Service.

140.    Blk Out breached all of the above-referenced contracts when it failed to pay adequate payroll taxes for each of the above-referenced Plaintiffs.

141.    Blk Out's breaches caused Plaintiffs to suffer harm.

142.    Blk Out is responsible to Plaintiffs for all harm related to its breaches of contract.

## COUNT IV

## Racially Discriminatory Hiring Practices

Filed          21-CI-006111          10/26/2021          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

143.    Plaintiff restates the allegations and averments contained in the previous paragraphs as if fully contained herein.

144.    By its own admission, through its agent Lidsey Swiegert, Blk Out only employs "black men" as drivers.

145.    By its own admission, through its agent,  Nora Rubinowski, Blk Out is "too black."

146.    By its own admission, through its agent, Nora Rubinowski, Blk Out will not promote black individuals to positions of authority.

147.    Plaintiff William Robards applied for and was denied a promotion.

148.    Plaintiff Wesley Means applied for and was denied a promotion.

149.    Blk Out's failure to promote black individuals or persons of color, because of race discrimination violates KRS Chapter 344.

150.    As a result, Blk Out is liable to Plaintiffs for damages.


## COUNT V

### Hostile and Discriminatory Work Environment


151.    Plaintiff restates the allegations and averments contained in the previous paragraphs as if fully contained herein.

152.    Conduct that is severe or pervasive enough to create an *objectively* **hostile** or abusive work environment--an environment that a reasonable person would find **hostile** or abusive—is actionable by an employee.

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

153.   Here, Blk Out's racist and discriminatory conduct was apprehensible and pervasive.

154.   Blk Out's commentary regarding the race of drivers was discr4iminatory and severe such that an objectively reasonable person under similar conditions would find it to be hostile and abusive.

155.   As a result, Blk Out is liable for damages incurred as a result of this hostile environment, incurred during the tenure of employment.

## COUNT VI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("OUTRAGE")

156.   Plaintiffs restate, adopt, reiterate, and reincorporate by reference all prior allegations as if fully set forth herein.

157.   In Kentucky, an intentional infliction of emotional distress or outrage has occurred when someone 1) acts intentionally, 2) in a manner that is so outrageous or intolerable as to offend generally accepted standards of morality and decency and 3) causes another to suffer severe emotional distress.[1]

158.   When Blk Out racistly targeted black employees, it acted outrageously such that that its actions offended a generally accepted standard of morality.

159.   As a result of Blk Out's intentional actions, Plaintiffs suffered harm.

160.   As set forth herein, Blk Out's actions were a substantial factor in causing injuries and damages to Plaintiffs and Blk Out is liable for all damages incurred herein.

[1]

NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court for relief as follows:

1. Judgment against the Defendants in an amount which will fairly and reasonably compensate the Plaintiffs for Plaintiff's damages alleged herein;

2. Judgment against the Defendants for punitive damages;

3. Trial by Jury;

4. Plaintiff's costs expended herein; and

5. Any other relief in law or equity to which the Plaintiff may reasonably be entitled including the right to amend this Complaint if necessary.

Respectfully Submitted,

Julie Reczek
Partner | Attorney
Reczek Law Office, PLLC
2005 Longest Ave, Suite 200
Louisville, Kentucky 40204
(502) 930-1034
julie@reczeklaw.com
Counsel for Plaintiffs

Georgia Hensley
Partner | Attorney
Hensley Trinkle Law, LLC
PO Box 3474

Filed          21-CI-006111     10/26/2021     David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
12/02/2021 06:36:12 PM
89578

Louisville, Kentucky 40201
Georgia@hensleytrinkle.com
Counsel for Plaintiffs

David L. Nicholson, Jefferson Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731


LINDSEY  SWEIGERT
3791 NEWBURG ROAD
LOUISVILLE, KY 40214



## KCOJ eFiling Cover Sheet

Case Number: 21-CI-006111

Envelope Number: 3989130

Package Retrieval Number: 398913026875614@00000985756

Service by: Certified Mail

Service Fee:  $ 0.00

Postage Fee: $13.96


The attached documents were generated via the Kentucky Court of Justice eFiling system. For more
information on eFiling, go to http://courts.ky.gov/efiling.

Package: 000001 of 000022

Presiding Judge: HON. OLU A. STEVENS (630305)

Package: 000001 of 000022