UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WILLIAM KAMERON ROBARDS et al.                                    Plaintiffs

v.                                                    Civil Action No. 3:21-cv-728-RGJ

BLK OUT TRANSPORT et al.                                           Defendants

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

Defendants BLK Out Transport ("BLK"), Lindsey Sweigert ("Lindsey"), and Garrett Sweigert ("Garrett" together with BLK and Lindsey, "Defendants") individually move to dismiss William Robards' ("Robards"), Darrius Calvin's ("Calvin"), Wesley Means' ("Means"), Ryan Crutcher's ("Crutcher"), and Eric Sitegraves' ("Sitegraves" together with Robards, Calvin, Means, and Crutcher, "Plaintiffs") Complaint [DE 1-1] pursuant to Federal Rule of Civil Procedure 12(b)(6).  [DE 14; DE 15; DE 16].  Plaintiffs responded [DE 18; DE 19-1; DE 20-1] and Defendants replied [DE 25; DE 26; DE 27]. This matter is ripe.  For the reasons that follow, Defendants' motions to dismiss [DE 14; DE 15; DE 16] are **GRANTED IN PART** and **DENIED IN PART** as set forth below.

## I.    BACKGROUND

BLK is a trucking company that has terminals at the Chicago O'Hare International Airport and Louisville Muhammad Ali International Airport.  [DE 19].  Garrett is the president and owner of BLK.  [*Id.*].  Lindsey, Garrett's wife, is an employee at BLK.  [DE 15 at 190].  Yet Robards claims that Lindsey has acknowledged she is the "real owner" of BLK.  [DE 1-1 at 19].

All five Plaintiffs are former employees of BLK who identify as African American men.  [DE 18 at 259].  Robards worked as a driver for BLK from approximately March 1, 2021 to July

1

1, 2021 and claims he was terminated because of his race.  [DE 1-1 at 12–13].  Calvin worked in the BLK warehouse from approximately May, 2021 to June, 2021 and alleges that he left BLK due to "a hostile work environment, discrimination, and inappropriate business practices."  [*Id.* at 13–14].  Crutcher worked as a driver for BLK from April 5, 2021 to July 1, 2021 and asserts he quit his job because he was "unwelcome, disrespected, and discriminated against."  [*Id.* at 14-16].  Sitegraves began working for BLK in May 2021 but does not list his end date.  [*Id.*].  Stitegraves alleges that he quit his job at BLK as a driver due to the hostile, racist work environment.  [*Id.* at 16–17].  Means began working for BLK in March 2020.  [*Id.* at 17].  Although Means does not list his end date, he claims that he quit his job at BLK as a driver "due to [a] hostile discriminatory work environment and unsafe business practices."  [*Id.* at 19].

Plaintiffs have asserted six claims: (1) negligence under Kentucky law, (2) fraud, (3) breach of contract, (4) racially discriminatory hiring practices, (5) hostile and discriminatory work environment, and (6) intentional infliction of emotional distress.  [*Id.* at 23–27].  Defendants have moved to dismiss under Rule 12(b)(6).  [DE 14 at 147].

## II.    STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  As stated, when considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Plan Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions."  *Tackett v. M&G Polymers,*

*USA, LLC*, 561 F.3d 478, 488 (citation omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. Of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

## III.    MOTIONS TO DISMISS

Defendants all move to dismiss Plaintiffs' Complaint, arguing that the facts alleged are insufficient to support any of Plaintiffs' six claims.  [DE 14 at 149; DE 15 at 194; DE 16 at 228]. In response, Plaintiffs argue that the Complaint contains enough detail to survive Defendants' motions to dismiss.  [DE 18 at 259].  To evaluate Defendants' motions to dismiss in the most efficient and effective manner, the Court will address individual Title VII claims before addressing the remaining claims asserted against all Defendants.

*A.  Individual Liability Under Title VII and KRS Chapter 344*

Plaintiffs assert claims against Lindsey and Garrett for racially discriminatory hiring practices (Count IV) and for creating a hostile and discriminatory work environment (Count V).

[DE 1-1 at 25–27].  Defendants contend that these claims should be dismissed because individual capacity claims cannot be asserted under Title VII.  [DE 15 at 194; DE 16 at 227–28].

> Title VII makes it unlawful for an employer to
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.  Any person who believes they have been the subject of discrimination in violation of this statute may bring an action against the "employer." *Id.* § 2000e-5(b).  Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." *Id.* § 2000e(b).  Reviewing this definition and Title VII as a whole, the Sixth Circuit held that "Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 406 (6th Cir. 1997).  The Sixth Circuit explained that this interpretation is consistent with the majority of its sister circuits and district courts that have also addressed the same issue. *Id.* at 404–405; *see also Sirmans v. Fifth Third Bank*, No. 1:16-cv-899, 2017 WL 2304026, at *2 (S.D. Ohio May 4, 2017) (collecting cases).  Because KRS Chapter 344 mirrors Title VII, the Sixth Circuit applies this analysis equally to actions brought under KRS Chapter 344. *Wathen*, 115 F.3d at 405.

Plaintiffs' claims for racially discriminatory hiring and for creating a hostile and discriminatory work environment arise under Title VII [DE 19-1 at 269; DE 20-1 at 272] or KRS Chapter 344 [DE 1-1 at 26].  Regardless of which provision these claims were brought under, the analysis is the same because they were asserted against Lindsey and Garrett in their individual capacities. *See Wathen*, 115 F.3d at 405.  The Sixth Circuit has held that Plaintiffs cannot bring

individual capacity claims under Title VII or KRS Chapter 344. *See id.* at 406. Accordingly, no law supports Plaintiffs' claims. *Southfield*, 570 F. App'x at 487. Lindsey's Motions to Dismiss Plaintiffs' Complaint [DE 15] and Garrett's Motion to Dismiss Plaintiffs' Complaint [DE 16] are **GRANTED** as they relate to Count IV and V.

B. *Employer Liability and Additional Individual Capacity Liability*

Defendants argue that the facts alleged in Plaintiffs' Complaint are insufficient to support their claims.[1] [DE 14 at 148]. Plaintiffs contend that the Complaint contains enough detail to survive Defendants' motions to dismiss. [DE 18 at 259]. Accordingly, the Court will address each Count in order.

**a. Count I: Negligence**

Defendants argue that Plaintiffs have failed to state a claim for negligence because Defendants did not owe them a duty of care. [DE 14 at 150]. To prevail on a negligence claim under Kentucky law, the plaintiff must prove that the defendant (1) owed the plaintiff a duty of care, (2) the defendant breached the standard of care by which his duty is measured, and (3) that the breach was the legal cause of the consequent injury. *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012); *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003). Duty is a question of law for the court to decide, breach and injury are questions of fact for the jury to decide, and causation is a mixed question of law and fact. *Pathways*, 113 S.W.3d at 89 (citing *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980)). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Tr. Co.*, 724 S.W.2d 228, 229 (Ky. App. 1986).

---

[1] Because Lindsey and Garrett incorporate the arguments from BLK's Motion to Dismiss [DE 15 at 194; DE 16 at 228], the Court's analysis in this Section will apply equally to all three Defendants unless stated otherwise.

Plaintiffs allege that employers owe a duty to their employees under Kentucky law. [DE 1 at 23]. Plaintiffs argue that Defendants breached their duty by failing to compensate Plaintiffs or protect them from "Federal audit and injury." [*Id.*]. They also claim that Defendants breached their duty by violating "Federal Motor Carrier law." [*Id.* at 24]. Employers have a general duty to protect their "employees from hazards that are likely to cause death or serious bodily injury." *Hargis v. Baize*, 168 S.W.3d 36, 43 (Ky. 2005); *see also Auslander Props., LLC v. Nalley*, No. 2014-CA-000022-MR, 2016 WL 350726, at *2 (Ky. App. Jan. 29, 2016). Yet Plaintiffs' negligence claims do not involve physical injuries suffered while employed by BLK. Instead, Plaintiffs argue that Defendants owe Plaintiffs a duty because of their "contractual relationship." [DE 1 at 23]. Courts in the Sixth circuit have held that when a plaintiff asserts a duty arising from a breach of contract, then that action is properly asserted as a contract action, not a tort. *See, e.g.*, *Yinghong Mach. Int'l Ltd. v. Wholesale Equip., Co.*, No. 213CV02671JTFCGC, 2014 WL 12887673, at *4 (W.D. Tenn. Oct. 17, 2014) (citing *Weese v. Wyndham Vacation Resorts*, No. 3:07-CV-433, 2009 WL 1884058, at *5 (E.D. Tenn. June 30, 2009)). "[A] tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1986) (citing *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976)).

Assuming there is an employment contract as Plaintiffs allege, breach of that contract would be an action in contract, not tort. *See Wolfe*, 647 F.2d at 710. Plaintiffs have not cited case law suggesting that Defendants owe them a duty outside breach of contract. Plaintiffs argue that Defendants breached their duty by failing to compensate Plaintiffs or protect them from "Federal audit and injury." [DE 1 at 23]. Despite this claim, Plaintiffs have not cited authority indicating that a duty exists independent of a contract. Plaintiffs' claim that Defendants owe Plaintiffs a duty

via "Federal Motor Carrier law" [*id.* at 24] also must fail. Federal laws, including Federal Motor Carrier Safety Regulations, do not create a duty under Kentucky law. *See Short v. Marvin Keller Trucking, Inc.*, 570 F. Supp. 3d 459, 465–66 (E.D. Ky. 2021) (citing *T & M Jewelry v. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006)). That said, Plaintiffs do state that they suffered personal injury as a result of Defendants' conduct. [DE 1 at 24]. As noted above, Defendants did have a duty to protect Plaintiffs, as employees, from hazards likely to cause death or serious injury. *Hargis*, 168 S.W.3d at 43. Presuming all allegations in the complaint to be true and making all reasonable inferences in favor of the non-moving party, Plaintiffs have stated a claim, though much narrower than originally pled, for negligence. *Total Benefits Plan Agency, Inc.*, 552 F.3d at 434. Plaintiffs properly pled a claim for negligence only to the extent they claim they were exposed to hazards likely to cause death or serious injury. Accordingly, Defendants' motions to dismiss [DE 14; DE 15; DE 16] regarding Count I are **GRANTED IN PART** and **DENIED IN PART** to the extent Plaintiffs allege Defendants subjected them to hazards likely to cause death or serious injury.

### b.  Count II: Fraud

Defendants argue that Plaintiffs have failed to allege facts to support a claim for fraud under Kentucky law. [DE 14 at 151]. In Kentucky, "[f]raud through misrepresentation requires proof that: (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff reasonably relied upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff." *Helm v. Ratterman*, 778 Fed. App'x 359, 371 (6th Cir. 2019) (quoting *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747–48 (Ky. 2011)).

Claims of fraud are subject to a heightened pleading standard where the plaintiff must "state with particularity the circumstances constituting fraud or mistake.   Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  The Sixth Circuit has interpreted Fed. R. Civ. P. 9(b) "to mean a plaintiff must '(1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 982 (6th Cir. 2017). Additionally, "[a]lthough 'conditions of a person's mind may be alleged generally,' Fed. R. Civ. P. 9(b), the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  "Vague allegations of generic misrepresentations or omissions are not sufficient to survive a Rule 12(b)(6) challenge."  *William Beaumont Hosp. Sys*, 677 F. App'x at 983 (citing *Frank v. Dana Corp.*, 547 F.3d 564, 569–70 (6th Cir. 2008)).

Plaintiffs allege that BLK defrauded Plaintiffs by promising pay at rates higher than were actually paid.  [DE 1 at 24].  That said, Defendants correctly note that Plaintiffs have only articulated allegedly fraudulent statements made to Crutcher and Stitegraves.  [DE 27 at 514–15 (citing DE 1 at 15–16)].  In the Complaint, Plaintiffs allege BLK promised to pay Crutcher $22.00 per hour but paid him $20.00 per hour.  [DE 1 at 15].  It also alleges BLK promised to pay Stitegraves $16.00 per hour but paid him closer to $8.00 per hour.  [*Id.* at 16].  These statements, which are specifically identified and include the speaker, satisfy the first two requirements of the heightened pleading standard.  *See William Beaumont Hosp. Sys*, 677 F. App'x at 982.  These statements were made at the time of hiring.  [DE 1 at 14, 16; DE 18 at 262].  The Complaint

explains that the statements were fraudulent because Plaintiffs were not paid at the rates they were promised. [DE 1 at 24]. Crutcher and Stitegraves have satisfied the heightened pleading standard under Rule 9(b) for their wage-related fraud claims. *See William Beaumont Hosp. Sys*, 677 F. App'x at 982. That said, without pleading specifically explaining how Robards, Calvin, and Means were defrauded, their wage-related fraud claims must be dismissed. *See id.*

Plaintiffs also allege that Defendants committed fraud by representing that BLK was covered by the "Federal Motor Carrier Act and that it complied with all related laws." [DE 1 at 24]. Plaintiffs do not explain what specific statements BLK made or when these statements were articulated. Without more specific facts about potentially fraudulent conduct, Plaintiffs' claims are "[v]ague allegations of generic misrepresentations" that cannot withstand a motion to dismiss. Plaintiffs' fraudulent misrepresentation claims related to the Federal Motor Carrier Act must be dismissed because they fail to meet the Rule 9(b) pleading standard. *William Beaumont Hosp. Sys*, 677 F. App'x at 982. Therefore, Defendants' motions to dismiss [DE 14; DE 15; DE 16] regarding Count II are **GRANTED IN PART** and **DENIED IN PART** to the extent Crutcher and Stitegraves have alleged wage-related fraudulent misrepresentation claims.

### c.  Count III: Breach of Contract

In Count III, Plaintiffs allege that BLK "entered into an employment contract with [Plaintiffs]." [DE 1 at 25]. They also contend that BLK breached their employment contract by failing to compensate Plaintiffs according to their contracts, report Plaintiffs' income to the IRS, and pay adequate payroll taxes. [*Id.*]. Defendants argue that Count III should be dismissed because Plaintiffs "failed to allege an actionable breach of contract." [DE 14 at 153]. Besides

acknowledging the existence of their breach of contract claim [DE 18 at 259], Plaintiffs did not respond to Defendants' arguments [DE 27 at 519].[2]

To plead breach of contract under Kentucky law, a plaintiffs must plead the following elements: (1) a contract existed; (2) that the contract was breached; and (3) damages resulted from the breach. *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W. 3d 723, 727 (Ky. App. 2007). "It is well-settled in Kentucky that absent a contractual provision to the contrary or a statutory cause of action, an employer may terminate an employee's employment at-will." *Evans v. Two Hawk Emp. Servs.*, No. 2:14-cv-151 (WOB-CJS), 2015 WL 403149, *4–5 (E.D. Ky. Jan. 28, 2015). "Ordinarily an employer may discharge an at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Wymer v. JH Props., Inc.*, 50 S.W.3d 195, 198 (Ky. 2001). Because Plaintiffs are alleging breach of an employment contract, they must show that the "contract was entered into for a definite period of time; and likewise should show obligation on the part of the employee to render service for a fixed period and reciprocal obligation on the employer's part to retain the employee's services." *Clark v. Cincinnati N.O. & T.P.R.Y. Co.*, 79 S.W.2d 704, 706 (Ky. 1935).

Plaintiffs have failed to state a claim for breach of contract because they pled no facts indicating their employment was anything other than at-will. [DE 1]. Plaintiffs have not pled facts indicating the existence of a contract for Plaintiffs to render services or for BLK to employ Plaintiffs for a definite period of time. *Clark*, 79 S.W.2d at 706. Without facts supporting the

---

[2] The Sixth Circuit has held that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regul. Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)); *see also Smith v. Flinkfelt*, No. 13-02-GFVT, 2014 WL 1331182, at *5 (E.D. Ky. Mar. 31, 2014) ("[T]he case is strong for dismissing the uncontested arguments outright."). Because Plaintiffs have failed to respond Defendants' arguments, the Court must dismiss Count III. *See McPherson*, 125 F.3d at 995–96.

existence of an employment contract, Defendants were free to terminate Plaintiffs at-will. *Evans*, 2015 WL 403149, at \*4–5  Plaintiffs' claims for breach of contract are not plausible because the facts alleged are insufficient to state a claim. *See Southfield Educ. Ass'n*, 570 F. App'x at 487. Accordingly, Defendants' motions to dismiss [DE 14; DE 15; DE 16] as they relate to Count III are **GRANTED**.

### d.  Count IV: Racially Discriminatory Hiring Practices

Plaintiffs claim that they were denied promotions because of their race. [DE 1 at 26].  More specifically, Means and Robards both applied for and were denied promotions. [*Id.*].  BLK moved to dismiss this claim arguing that Plaintiffs failed to plead facts showing they were subject to any adverse hiring practices based on race. [DE 14 at 154].

Under Kentucky law, an employer may not "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, [or] age."  KRS § 344.040(1)(a).  Employers are also prohibited from depriving an "individual of employment opportunities or otherwise adversely affect status as an employee" for the same reasons. *Id.* § 344.040(1)(b).  Because KRS Chapter 344 mirrors Title VII, Kentucky courts use the same standards applied to Title VII when evaluating race discrimination claims. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000).  To sufficiently plead a claim of discrimination, the plaintiff bears the "not onerous" burden of proving discrimination by a preponderance of the evidence. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside

the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).

A complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference,' that [the defendant] discriminated against [the plaintiff] with respect to her compensation, terms, conditions, or privileges of employment, *because of* her race, color, religion, sex, or national origin.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 67–79; 42 U.S.C. § 2000e-2(a)(1)) (internal citations omitted) (edits omitted) (emphasis original). So, "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Id.* This standard of "'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678). The Supreme Court has cautioned that even when "it may appear on the face of the pleadings that a recovery is very remote and unlikely[,]" at this juncture, "an employment discrimination plaintiff need not plead a prima facie case of discrimination[.]" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

First, all five Plaintiffs assert that they were part of a protected class. [DE 1 at 13–18]. Plaintiffs each allege facts suggesting that they were qualified for their job. *See Baxter Healthcare Corp.*, 533 F.3d at 391. Robards, working as a driver, had a Class A commercial Driver's License and was described as a hardworking employee. [DE 1 at 12]. Calvin worked in the warehouse and was often given more work than other employees. [*Id.* at 14]. Crutcher, working as a driver, had a Class A license. [*Id.*]. Stitegraves worked as a driver and would do additional tasks at BLK. [*Id.* at 16–17]. Means, also while working as a driver, had multiple clients comment on the quality

of his work. [*Id.* at 18]. Accepting these facts as true, see *Total Benefits Plan Agency, Inc.*, 552 F.3d at 434, one could find that Plaintiffs were qualified for their positions.

Plaintiffs also satisfy the third element by alleging adverse employment actions. *See Baxter Healthcare Corp.*, 533 F.3d at 391. Robards and Means both allege that they were denied promotions due to their race. [DE 1 at 26]. Both men were ultimately terminated. [*Id.* at 22]. Calvin, Crutcher, and Stitegraves all allege that they were constructively terminated due to racial discrimination. [*Id.*]. Although Calvin, Crutcher, and Stitegraves were not officially terminated by BLK, the Sixth Circuit has held that employees can be constructively terminated if they were subject to harassment at work and the employer did not remedy the situation. *See Queen v. City of Bowling Green*, 956 F.3d 893, 904 (6th Cir. 2020). Moreover, a constructive termination can amount to an adverse employment action. *See id.* Finally, Plaintiffs all allege that they were treated differently that similarly situated white employees. [DE 1 at 13–18]. Therefore, Plaintiffs sufficiently pled claims for discrimination. *See Baxter Healthcare Corp.*, 533 F.3d at 391. Taking these facts as true and making all reasonable inferences in favor of Plaintiffs, the Court cannot dismiss Count IV. *Total Benefits Plan Agency, Inc.*, 552 F.3d at 434. Accordingly, BLK's Motion to Dismiss [DE 14] as it relates to Count IV is **DENIED**.

### e. Count V: Hostile and Discriminatory Work Environment

Plaintiffs argue that Defendants created a hostile and discriminatory work environment. [DE 1 at 26]. Defendants contend that Plaintiffs have not alleged facts to suggest Defendants' conduct created a hostile work environment. [DE 14 at 158]. Under Title VII, "the plaintiff bears the initial burden of submitting evidence to support a prima facie [c]ase of discrimination[,]" and therefore "must produce 'evidence sufficiently strong to raise an inference that the employer's conduct was racially motivated.'" *Jackson v. Richards Med. Co.*, 961 F.2d 575, 587 (6th Cir.

13

1992) (quoting *McKenzie v. Sawyer*, 684 F.2d 62, 71 (D.C. Cir. 1982)).  That said, "[t]he liberal pleading standard applicable to civil complaints" does not require a plaintiff to establish her prima facie case at this stage, "but [her complaint] must allege facts that establish a plausible claim to relief."  *Carrethers v. Speer*, 698 F. App'x 266, 270 (6th Cir. 2017).

To establish a claim that a plaintiff tolerated a racially hostile work environment under Title VII or KRS Chapter 344, "the plaintiff must show that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim subjectively regarded it as abusive."  *Jackson v. Quanex Corp.*, 191 F.3d 647, 658–59 (6th Cir. 1999).  "The plaintiff must also prove that his employer 'tolerated or condoned the situation,' or knew or should have known of the alleged conduct and did nothing to correct the situation."  *Smith*, 220 F.3d at 758 (quoting *id.* at 659).  To determine whether a work environment was sufficiently hostile, courts will examine all circumstances, including: (1) the frequency of discriminatory conduct; (2) the severity of discriminatory conduct; (3) whether the discriminatory conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the discriminatory conduct unreasonably interfered with an employee's performance.  *See Wilson v. Dana Corp.*, 210 F. Supp. 2d 867, 877 (W.D. Ky 2002) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).  The harassment must have been bad enough to adversely affect the employee's ability to do his or her job.  *See id.*

Plaintiffs allege that BLK subjected them to a hostile work environment that a reasonable person would find severely discriminatory.  [DE 1 at 27].  To support this claim, Calvin alleges that he heard an employee describe black employees as "ghetto" in conversations with Lindsey.  [*Id.* at 14].  Crutcher asserts that black employees were instructed to perform "grueling physical tasks outside their job descriptions" but white employees were not asked to do the same.  [*Id.*].  He

14

also claims that black employees were asked to finish the tasks of white employees and were rarely allowed standard breaks. [*Id.*]. He alleges that an employee repeatedly made discriminatory comments and stated that "Blk Out is all black." [*Id.* at 15]. Stitegraves alleges that an employee constantly made jokes about his African American heritage and questioned his citizenship. [*Id.* at 16]. Stitegraves was characterized as an "angry black man" when he asked about his pay, hours, and the work environment. [*Id.* at 17]. Means claims that an employee frequently referred to him as a "gorilla." [*Id.* at 18]. During his termination, Robards alleges that Lindsey told him "he was too angry of a black man[.]" [*Id.* at 21].

Based on the allegations in Plaintiffs' Complaint, discriminatory conduct frequently occurred at BLK. *See Wilson*, 210 F. Supp. 2d at 877. The severity of the discrimination ranged from racially charged comments to instructing Plaintiffs to take on additional tasks because of their race. *See id.* Although Defendants argued that discriminatory comments were not severe or pervasive [DE 14 at 160], the Court may not disaggregate discriminatory conduct. *See Jackson*, 191 F.3d at 659. Therefore, all discriminatory conduct alleged by Plaintiffs taken together as a whole could be considered severe. There is no allegation that agents of BLK engaged in physically threatening conduct towards Plaintiffs. However, Plaintiffs have alleged that discriminatory comments were humiliating and rose to more than a mere "offensive utterance." *See Wilson*, 210 F. Supp. 2d at 877. Plaintiffs also allege that discriminatory conduct interfered with the performance of their duties at BLK. Specifically, Plaintiffs allege that because of their race, Defendants gave them grueling physical tasks that interfered with their work. [DE 1 at 13–18]. Based on these allegations, the work environment at BLK may have been "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that

the [Plaintiffs] subjectively regarded it as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658–59 (6th Cir. 1999).

Plaintiffs allege that discriminatory conduct was reported to supervisors at BLK. [DE 1 at 17]. When discriminatory conduct was reported, Plaintiffs claim that a supervisor made it clear that nothing would be done to remedy the situation. [*Id.*]. Based on these allegations, Defendants could have known of the discriminatory conduct and merely tolerated the situation. *See Smith*, 220 F.3d at 760. Taking the facts in Plaintiffs' Compliant as true, see *Total Benefits Plan Agency, Inc.*, 552 F.3d at 434, Plaintiffs have successfully established a plausible claim for a hostile and discriminatory work environment under Title VII or KRS Chapter 344. Accordingly, BLK's Motion to Dismiss [DE 14] as it relates to Count V is **DENIED**.

### f.   Count VI: Intentional Infliction of Emotional Distress (Outrage)

Plaintiffs claim intentional infliction of emotional distress ("IIED"), also known as "outrage." [DE 1 at 27]. Defendants contend that Plaintiffs' allegations fail to rise to the level necessary to allege IIED. [DE 14 at 160]. "Kentucky courts have 'set a high threshold for outrage claims[.]'" *Osborn v. Haley*, No. 5:03CV-192-R, 2008 WL 974578, at *6 (W.D. Ky. Apr. 8, 2008) (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004)). In Kentucky, a plaintiff must prove that Defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting *Restatement (Second) of Torts*, § 46 Comment d (1965)). A prima facie case for outrage requires a showing "(1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the

emotional distress; and (4) that the emotional distress was severe." *Osborn*, 2008 WL 974578, at *6 (citing *Stringer*, 151 S.W.3d at 791).

Plaintiffs' IIED claim against BLK must fail because it is preempted by the Kentucky Civil Rights Act. *See Alexander v. Univ. of Kentucky*, No. 5:10-CV-48-REW, 2012 WL 1068764, at *26 (E.D. Ky. Mar. 28, 2012). "[W]hen a plaintiff prosecutes a statutory discrimination claim under KRS Chapter 344 and a common law claim of IIED/outrageous conduct, the former preempts the latter." *Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 592 (W.D. Ky. 2004), *aff'd*, 123 F. App'x 699 (6th Cir. 2005) (citing *Kroger Co. v. Buckley,* 113 S.W.3d 644 (Ky. App. 2003) and *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229 (Ky. App. 2001)). Plaintiffs have pled claims for discrimination under the KRS Chapter 344 and Title VII. [DE 1 at 25–27]. Accordingly, Plaintiffs' claim for IIED asserted against BLK is preempted.

Plaintiffs' IIED claim is not preempted against Lindsey or Garrett. *See Alexander*, 2012 WL 1068764, at *26. That said, Plaintiffs' IIED claims against Lindsey and Garrett must fail for other reasons. Plaintiffs have not included a single instance in their complaint where Garrett engaged in discriminatory conduct. In one instance, Lindsey is alleged to have been a party to a conversation where another employee uttered discriminatory comments. [DE 1 at 14]. Robards alleges he had a conversation with Lindsey where she stated, "that he was too angry of a black man and that he was making her uncomfortable." [*Id.* at 21]. No other plaintiff alleges Lindsey made any discriminatory comments directed at them. Discriminatory comments mentioned in previous sections were all made by other employees at BLK.

Because Plaintiffs have failed to allege any intentional, outrageous conduct by Garrett, their claims against him for IIED must be dismissed. *See Alexander*, 2012 WL 1068764, at *26–27. To be liable for IIED, a defendant must have engaged in intentional or reckless conduct. *See*

17

*Osborn*, 2008 WL 974578, at *6 (citing *Stringer*, 151 S.W.3d at 791).  Lindsey cannot be liable for the intentional comments of another.  *See id.*  This leaves the single discriminatory comment Lindsey made to Robards when he was terminated.  [DE 1 at 21].  Under Kentucky law, "[t]ermination from employment, even if for discriminatory reasons, is insufficient to constitute outrageous conduct sufficient to support a claim for [IIED]." *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 368 (Ky. App. 2010) (citing *Benningfield v. Pettit Env't Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005)).  Accordingly, Robards' claim against Lindsey for IIED must also fail.  *See id.*  Even accepting all facts in the Complaint as true and making all reasonable inferences in favor of Plaintiffs, the Complaint still fails to sufficiently allege IIED against Defendants.  *Total Benefits Plan Agency, Inc.*, 552 F.3d at 434.  In this case, no law supports a claim for IIED.  *Southfield Educ. Ass'n*, 570 F. App'x at 487.  Therefore, Defendants' motions to dismiss [DE 14; DE 15; DE 16] as they relate to Count VI are **GRANTED**.

## IV.   CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1.     Lindsey's Motion to Dismiss Plaintiffs' Complaint [DE 15] and Garrett's Motion to Dismiss Plaintiffs' Complaint [DE 16] are **GRANTED** as they relate to Count IV and V.

2.     Defendants' motions to dismiss [DE 14; DE 15; DE 16] regarding Count I are **GRANTED IN PART** and **DENIED IN PART** to the extent Plaintiffs allege Defendants subjected them to hazards likely to cause death or serious injury;

3.     Defendants' motions to dismiss [DE 14; DE 15; DE 16] regarding Count II are **GRANTED IN PART** and **DENIED IN PART** to the extent Crutcher and Stitegraves have alleged wage-related fraudulent misrepresentation claims;

4.       Defendants' motions to dismiss [DE 14; DE 15; DE 16] as they relate to Count III

are **GRANTED**;

5.       BLK's Motion to Dismiss [DE 14] as it relates to Count IV is **DENIED**;

6.       BLK's Motion to Dismiss [DE 14] as it relates to Count V is **DENIED**; and

7.       Defendants' motions to dismiss [DE 14; DE 15; DE 16] as they relate to Count VI

are **GRANTED**.

Rebecca Grady Jennings, District Judge

United States District Court

August 25, 2022

19